All righty, that brings us to Cozzi v. Thomas. That's okay, we've got to wait for the courtroom to clear anyway. Whenever you're ready, counsel, thank you. May it please the court, I'm Attorney James Levin, I represent Detective Cedrick Thomas in this matter of Cozzi v. Cedrick Thomas in the city of Birmingham. I'll briefly go through some factual issues because we're talking about probable cause and arguable probable cause and there may need to be some factual issues for the court to hear. That's fine. The case arises out of an investigation of two robberies at pharmacies, a Walgreens pharmacy and a Rite Aid pharmacy. They happened one day after the other. At the Walgreens pharmacy, Detective Cedrick Thomas was assigned to investigate the Walgreens pharmacy, which was the first robbery. The second robbery was assigned to a Detective George Montgomery, the Rite Aid robbery. They both came to believe, both detectives came to believe that they both worked for the city of Birmingham. They both came to believe that these robberies were committed by the same person because during the robberies, the individual would come in and would state that he had a bomb, had a plastic bag and would state, I have a bomb. All he wanted was narcotics, pills. In both robberies, that's what he got, narcotics and pills. Thereafter, during the investigation, we put the videos of the robberies on a program called Crime Stoppers, which is a local program in Birmingham where we feature crimes that have happened if you can identify this person or recognize this person. We got a call from an anonymous tip from an individual who said that they recognized the person. The person resembled James Cozy. I think somewhere in the record, we have the Crime Stoppers tip in the record. Thereafter, Deputy Hash Brasher with the Jefferson County Sheriff's Department, not the city of Birmingham, but Birmingham is in Jefferson County. Detective Brasher said he got a call from a confidential informant, his confidential informant. And the confidential informant informed him that the person who had committed the robberies was a James, Jeffrey Cozy. And Mr. Cozy gave the identification of Mr. Cozy, how Mr. Cozy looked, gave his address, the kind of car Mr. Cozy had. And said he kind of remembered that Mr. Cozy worked at a paint shop. And so the mask that the robber had on looked like a paint shop mask. Detective Thomas got a search warrant for the house and executed the search warrant. During the search of the house, they discovered some tennis shoes that appeared to look like the same, similar tennis shoes, at least the brand, Adidas. Similar tennis shoes as the person who had committed the robberies. And also they located two safes and 32 loose pills in a bag. And we would point Well, a lot of people wear Adidas sneakers. And a lot of people who wear Adidas sneakers, I would argue, take pills. A lot of people take pills for a lot of different reasons. Yes. But normally you don't have your, if you're taking prescription pills, you don't have them in a loose bag. Here's the problem I have with the pill situation. My understanding was that Mr. Cozy represented that he always kept the pills that he had in his safe. And that the safe wasn't opened until he provided the combination, which was back at the police station. And so it seems to me like there's a material issue of fact. Because we have to take Mr. Cozy's statements of fact as true for purposes of summary judgment. There's a material issue of fact as to whether Officer Thomas knew at the time of the arrest about the pills. I recognize that it's Officer Thomas's position that he did know. But that's not really the issue. The issue is whether there's a material issue of fact about that. Yeah, and that narrows us down to that issue. And this court has said in Feliciano v. City of Miami Beach that it is as a matter of law, as a matter of law, incredible meaning whether someone saw something or not, an affidavit. As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent or incredible as a matter of law, meaning that it relates to the facts that could not have possibly been observed. Mr. Cozy, in his testimony, has made it clear he was not in the house. But he doesn't have to be in the house to know that he keeps his pills all the time in his safe. And that he doesn't ever keep them loose. Now, it may be that a jury wouldn't believe him when he testified to that. But that's a separate question. But that's not what Mr. Cozy said. Mr. Cozy said. I have his declaration right here. Yes. That's how I understood his declaration. Yeah. But Mr. Cozy is talking about his prescription pills. And one of the pictures in the record has, unfortunately, it's a black and white picture. But it has the prescription bottle in the safe. But before that, the technician at 2, and that's why the times are very important. The technician, Logan, the police technician, Logan, located the pills at 242. We sent the court a tape, which was supplemented the record, when Detective Thomas began his interview with Mr. Cozy downtown. And that tape, document 52 of the record, starts off, the time is 455, 455 p.m. After that, Mr. Cozy goes downstairs, an hour later, because the tape is an hour long. Mr. Cozy goes downstairs with Detective Thomas. It opens up the safe. But at 252, I mean 242, the technician found the pills, not in the safe, but as it states. And I would point the court to page 209 in the record.  The technician found the pills. Page 209 is the evidence technician's report, where he says, execute a search warrant, item 2, collected time 1442, which is 242. Two hours before Mr. Cozy gave his interview, and three hours before Mr. Cozy opened his safe. Mr. Cozy's declaration talks about his prescription pills. He doesn't say prescription pills. Maybe he did, but his prescription pills. Is this the evidence technician who books it in? Yes. The evidence technician. This is his report, right? Well, he gave it to Thomas, who ultimately gave the numbers, the booking numbers on the documents. And I believe we put that in there. Also, that's on page 203. So what you're saying is that the pills allegedly found in the house in the bag, the loose pills, were recorded on a document at the police station before the safe was opened? Yes. Just to make sure I understand, because I was a little unclear on this. Was it necessarily recorded at 242, or was it written that it was collected at 242 at the time that it was recorded? Because there's a big difference there. Time collected, 242. I understand that that's what it says there, but what I'm asking you is, was it reported at 242, or was it reported at, you know, 6 o'clock at night, noting that it was collected at 242? When was the report signed? What time? The time on page 209. Let's look at the, that is 1330, still before the interview that Mr. Cozy gave. 1330, and also, Your Honor. Wait, wait, wait. I'm a little confused. How could it have been signed before the pills were collected? Weren't the pills collected at 1442? Oh, I'm sorry. I apologize. That's okay. That's the time the call was received. I apologize, Your Honor. No problem. Let me, I'm looking at this document. I don't think it necessarily says it, Your Honor. I think it has a time seen release here. And as I get older, I find I need these to. You're in good company. And this looks like 1530. 1530. Yes. Okay, so you're saying that if it's 1530, then it's still before Mr. Cozy was interviewed. And also, Your Honor, I would point out the U.S. v. Allison, 953, Fed 2nd, 1346 at 1350, 11th Circuit case, which states that where there's at least minimal communication between different officers, collective knowledge of the officers determines probable cause for arrest. All their knowledge goes together. I understand. But the issue is whether or not the officer is lying. I'm not suggesting that Officer Thomas is lying. But the position of Mr. Cozy, as I understood it, is that he is lying. And so we have to look and see whether it's demonstrable that he was not lying. And if it's not, then there's a material issue of fact. Yes. And the records show, what's in the record, Mr. Cozy could not observe the collection. Remember, he stated, I was outside. Mr. Cozy is correct about there's prescription pills in his safe. But the loose pills, the 32 loose pills in the bag, is what the officers collected before the safe was opened. And let me ask you something else while you're up there. I know you're over your time, but I'm interested. Now, my understanding is that, I think it was the confidential informant. But in any case, also Mr. Cozy's roommate. Both told Officer Thomas that Mr. Cozy had a tattoo on his hand that said Lori, I guess. And that when you looked at the photographs, that in fact, there's no tattoo there. Right? I mean, and that Officer Thomas had that with him. I mean, that seems kind of problematic when you're looking at the totality of the circumstances. Well, the statements by, at least, I think Cozy. I'm not sure if Mr. Thompson said that. He was the one where we found narcotics, other narcotics in his safe. So. Okay. But your confidential informant also said it. Yeah. And I don't know whether the. And you could have just checked it. You don't even have to. You could just look at Mr. Cozy's hand and see whether it's there. And if it's there, then you can compare it to the photograph. Why wouldn't you just do that? I'm not sure if the photograph necessarily shows definitively. Well, that's what, that's the whole point, right? Because the roommate said that can't be Mr. Cozy because there's no tattoo. I don't know if the roommate said that or Mr. Cozy said that. No, it was the roommate. But it doesn't really matter who said it because it could readily be checked. Right? Who cares who said it? You could check and see if Mr. Cozy had a tattoo and whether it was, whether there was a tattoo on the person in the photograph right there. But that's one issue where Mr. Cozy's girlfriend is also saying it's cozy. Except that there's a material issue of fact about that as well because Antonoff says that she never said, that she never said that until she got to the station. So that's after the arrest. So we can't count on that in this case. Now, maybe a jury would disbelieve her. But, again, that's an issue for another day. But what articulable or the probable cause we're looking for here is not probable cause. Correct, Your Honor? It's arguable probable cause. Yes, it's arguable probable cause, but it still has to rise to the level of arguable probable cause, and we have to look at the totality of the circumstances. Exactly. And when you look at the totality of the circumstances, if you are looking for a suspect who has robbed a pharmacy and has robbed the pharmacy of loose pills and came in and said, and had a plastic bag and said, I have a bomb in it and then you find the loose, or find loose pills in the house, that is arguable. Loose pills alone are enough? Even in the case of contradictory evidence that this is the person who robbed the bank because the actual obvious comparison of the tattoo versus no tattoo in the photo shows otherwise? And you have a confidential informant saying it's Cozy, and you have a tipster saying it's Cozy. Just to be clear, no witness said that they knew that Cozy had robbed the pharmacy. What they said was he looked like the guy in the video. Exactly. Yes, it does. And I see my time is up. Thank you. You've reserved five minutes for rebuttal. Yes. Thank you. May it please the Court, I'm David Guest-Pass for Jeffrey Cozy. I would suggest that the last part of the discussion is really what's critical here. I'd suggest this. The issue presented is whether an officer who acted on the basis of facts he chose to believe, without considering immediately available contrary and demonstrably exculpatory facts, is shielded by qualified immunity. And I don't think that's the case. To be clear, what Mr. Cozy's roommate actually said was he looked at the picture that was shown to him by Detective Thomas. He said this guy has several tattoos on his arm, and Jeff only has one. That was something that was there. All Officer Thomas had to do was look at the picture and look at Jeff Cozy's arm and make that determination. That specifically would have exculpated him from the robberies. And I think this idea of focusing, as Officer Thomas wants to, on the pills is sort of waving this bright, shiny object. Let me ask you a question, though, just so I make sure I have the facts straight, because I may not. Is it your position that the pills were in the safe the whole time, or are you conceding that Mr. Cozy did not contest the bag of pills? For the purpose of this argument, for the purpose of the argument I'm making now, I would concede that. I'm not conceding it as a general issue. Okay, so, and I understand your argument is it doesn't matter whether there were pills or not. Exactly. For legal purposes. But for purposes of making sure we get the facts right, am I misunderstanding the record as asserting by Mr. Cozy that the pills could not have been found outside of the safe, or is that Mr. Cozy's position? That was his position, yes. Well, let me, can I try to refine that a little bit? My understanding is the pills that were in the bag were pills for irritable bowel syndrome and acid reflux. Do you agree with that? I don't recall, actually. My recollection was that they had not even been analyzed. Well, not at that point, right. Yes. But Mr. Cozy's affidavit says that there were pills prescribed to him because of his back problems, and I think somewhere in the record they're identified as Lortab and Soma. Correct. And that he always kept those pills in his safe. So my point is, if the pills in the bag were not pills for back pain, then Mr. Cozy's affidavit is actually consistent with Mr. Thomas' position that they found pills at the scene. I think that's fair, and I would also say that if those were the pills, then they weren't contraband and they didn't give rise to any basis for an arrest. Well, it wasn't readily ascertainable at the time that they were pills for irritable bowel and whatever else. But, of course, it gets back to the question, simply because you have loose pills on your bureau, what evidence is that that you stole the pills from a pharmacy? I mean, just the fact that you have loose pills, a lot of people may keep them in a bottle. Maybe they were going traveling somewhere. They put them in a bag so it's easier to get them through security at the airport. I mean, who knows how people keep their pills. I would agree with that. I would also say this, that under the circumstance of what Detective Thomas knew at the time, which was that Mr. Cozy had prescriptions for pain medication, that the best that the discovery of those pills is would give rise to some suspicion that would require additional investigation. The discovery of those pills in his room, it wasn't like they were out somewhere, in his room. All that does is say, well, we should find out more. It doesn't give rise to probable cause any more than reasonable suspicion justifying a Terry stop and frisk gives rise to probable cause to arrest. In particular, that is the case because none of the other specific things that were mentioned in the affidavit for the search warrant, none of the specific things which the search warrant said to find, the face mask, a straw hat, a t-shirt, gangrene, UAB t-shirt, the note for the robbery, none of those things were found. The fact that they found some loose pills in his room certainly does not change all the other facts. It doesn't give rise, even without the fact that he could easily have determined from the tattoos that Jeff Cozy was not the robber. Other than that, it still doesn't give rise to even arguable probable cause. It gives rise, at best, to the opportunity to, or the suspicion that would require further investigation. If they wanted to take the pills and have them analyzed, they could have done that. But they had no right at that point, I would suggest, to arrest him. I don't see how finding pills in his room creates any suspicion. Indeed, the magistrate judge in his report and recommendation said it gave rise to suspicion. And then he suggested that because it gave rise to suspicion, he was reasonably suspicious, I think were the words he said, because he was reasonably suspicious, that under those circumstances he had arguable probable cause to arrest. And I think there's a disconnect even in that analysis. Right. There's a difference, obviously, between reasonable suspicion and probable cause, and even arguable probable cause. I think that's absolutely right. And once again, I think that, well, what is controlling here is just the Kingsland case. I think if you look at some of the actual language in the Kingsland case, and you then compare that to what Officer Thomas did, it's clear. This court said that Kingsland contends that, objectively, officers should not be permitted to turn a blind eye to exculpatory information available to them and instead support their actions on selected facts they chose to focus upon. That is exactly what Officer Thomas did here. He turned a blind eye to the tattoos that were objectively right there in front of him and focused, by his own admission, on the information he got from the presumed two different sources. And again, I don't think there's any proof that it wasn't the same person using two different channels to convey that information for whatever reason. Is there any evidence that these tipsters or informants were deemed reliable? On the contrary. I asked Officer Thomas specifically at his deposition whether he had made any determinations to reliability, and he said no. Again, the magistrate judge in his report and recommendations and in Mr. Thomas' appellate brief say, well, Officer Thomas is entitled to rely on the information he got from a fellow officer. But Officer Thomas specifically said, in response to a question at deposition, that he had no idea about the reliability. And that is why, when officers use confidential informants and they ask for search warrants, they will include in the affidavit that this informant has proven reliable on X number of occasions. None of that took place here. So, in other words, as far as the record is concerned, Officer Thomas never asked the deputy sheriff whether the person was reliable, according to the deputy sheriff, and the deputy sheriff never volunteered that information. That is correct. That is correct. And... And is there any indication that the officers did any independent investigation to corroborate whether the informants, informant and or tipster were reliable? The only corroboration they got was having a police officer go out to the address that was given and observe the car in the driveway. But... Nothing else. We've said that that's not really enough because it doesn't show, it doesn't indicate any kind of nexus to the crime or predict future behavior. And as far as we know, the tipster could have been someone who had a vendetta against him. I mean, we just don't know anything about the situation. Exactly. And I think that's why I suggest, again, since we don't know the names or the identities of either of these two supposed sources, where it could easily have been the same person using two different means and providing different, you know, similar information. I would also note, by the way, that, again, all they said is this guy looks like Jeff Cozy. And when I asked Officer Thomas at his deposition about James Hill, who two witnesses identified as the guy that was the robber and who also used the same alias as the robber used, he said, oh, no, they didn't identify him. They just said it looked like him. You know, he looked more like the robber than anyone else. So even by Detective Thomas' own analysis, the fact that these guys said it looks like him, which he then says was one of the reasons, the basis for his probable cause to arrest, even by his own testimony, saying it looks like him is not identifying him. Other than that, without any other questions, I will cede the remainder of my time. Thank you. Thank you, Jen. Thank you. Your Honor, as to the Mr. Hill issue, Mr. Hill was incarcerated. That's why we didn't move further on that. Well, I think there might be some question in the record about whether he was or he wasn't. But in any case, I'm not sure that really matters. The question here that matters is whether there was at least arguable probable cause to arrest Mr. Cozy based on what the officers knew or should have known at the time. And in that situation, I agree with the magistrate judge's view of this, that we have a difference of opinion on, not we, but we have a difference of opinion on how much we needed for arguable probable cause. But I think we did have arguable probable cause. A mistake or not investigating the way you want the officer to investigate does not say that the officer does not get qualified immunity. I mean, it does seem troubling, and I don't know how you explain the whole tattoo situation. Is there a response you have to that? Well, the tattoo situation wasn't the most, I have to say it this way, wasn't the most relevant point when we had a bag full of pills when we're looking for someone who is robbing people for pills. But as Judge Bartle noted, I mean, lots of people do keep pills in plastic bags, especially if they've been traveling, they have to get it through security. Again, as Judge Bartle noted, sometimes they'll, you know, keep it in a bag on their person. So how does that, how does that pretty much alone provide PC that Mr., or even arguable PC, that Mr. Cozy was the person who robbed these two stores? But this is at Mr. Cozy's home, and we have the. But, I mean, lots of people keep bags of pills at their home. Yeah. But the suspect we're looking for is someone who's robbed, used a plastic bag in that robbery, and now who's robbed for pills. We go to his home on a ballot search. But doesn't that simply rise the level of suspicion? Because I'm sure there are hundreds, if not thousands, of people in Birmingham and other cities that take pills and keep them in plastic bags. I mean, that's not enough to create probable, arguable probable cause. But when we have both the tipster and the confidential informant. There's no indication that the tipster or the confidential informant are reliable. There's no indication they're two separate people. So how does that, how does that give you more than just pills? Well, the officers are entitled, Thomas is entitled to rely on Brasher, Deputy Brasher's information and knowledge of what's going on. But what does that add to it? What does Deputy Brasher's information add that you didn't already have? They led us to Cozy. They led us. We would not have gone to, I'm sorry. That's okay. I was just going to say, my understanding is the way that you were led to Cozy was you got a tip and or a confidential informant who said, the person in the pictures looks like it could be Jeffrey Cozy. Right? So that's it. If that's no more than the, you know, what Detective Brasher said doesn't seem to me to add anything more than what the confidential informant and or the tipster said. And he had a mask that was the kind of mask that Cozy used in his previous job. No mask was found though at the home. But Cozy did have that previous job where he used those kind of masks. And he had a limp that the people had identified. That looks like Cozy. And Cozy said he had a back problem. Those were things that led the officers to believe, wait a minute, and even if the officers did not have probable cause, a mistake in believing that you have probable cause still doesn't deny the officer from qualified immunity here. True, but I guess there are a lot of issues I have with this. But one of them, one of my biggest concerns is I don't understand why Officer Thomas, when faced with two different sources, including the confidential informant, that Mr. Cozy had certain tattoos that were, you know, that were different from the tattoos that were in the photograph. Why wouldn't Officer Thomas at least look at that? He questioned him about that when he took him downtown. But that's after he arrested him. After he detained him. So that's irrelevant, right? I mean, that's irrelevant to whether or not there was arguable probable cause when he arrested him. Why don't we have to consider the fact that he had this information at his fingertips, and at least as I can tell, as far as I can tell on the record, he did nothing to follow up on it. Well, his follow up was when he questioned him later on. But before that, he also had this other information, people identifying Cozy, the drugs found in the location. Mr. Cozy not being there to his declaration, as Judge Pryor has pointed out, is consistent with now consistent with what Thomas says, that these are different drugs. These are drugs found on the counter in his declaration, which caused the change from the magistrate judge's opinion to the district judge's opinion. The declaration is now consistent with Thomas when the district judge found that the declaration was inconsistent and created a material issue, a genuine issue of material fact, when actually it didn't. Because Cozy didn't see where the drugs were found. Thank you, counsel. Thank you. All right, we'll be in recess. I like the we the people tie. It's a great place. Thank you, counsel. Travel safely back. Thank you.